1  JAMES DAIRE (S.B.N. 239637)
   REED LYON (S.B.N. 288361)
2  YELP INC.
3  350 Mission St. 10th Floor
   San Francisco, CA 94105
4  Telephone: (415) 908-3801
   Facsimile: (415) 615-0809
5  Email:       jdaire@yelp.com
   Email:       reedlyon@yelp.com
6
7  Attorney for Plaintiff
   YELP INC.
8

9                    **UNITED STATES DISTRICT COURT**

10                  **NORTHERN DISTRICT OF CALIFORNIA**

11

12  YELP INC., a Delaware corporation,          CASE NO: 23-cv-6508-WHA

13        Plaintiff,
                                                FIRST AMENDED COMPLAINT FOR
14  v.                                          DAMAGES AND INJUNCTIVE RELIEF
                                                FOR:
15  REVIEWVIO INC. d/b/a DANDY,
                                                (1) FEDERAL UNFAIR COMPETITION
16        Defendant.                            (2) FEDERAL TRADEMARK
                                                    INFRINGEMENT
17                                              (3) FEDERAL TRADEMARK DILUTION
                                                (4) VIOLATION OF CALIFORNIA'S
18                                                  UNFAIR COMPETITION LAW
                                                (5) VIOLATION OF CALIFORNIA'S
19                                                  FALSE ADVERTISING LAW
                                                (6) BREACH OF CONTRACT
20
                                                [DEMAND FOR JURY TRIAL]
21

22

23

24

25

26

27

28

Under Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiff Yelp Inc. brings this First Amended Complaint against Defendant Reviewvio Inc., doing business as Dandy, which is responsible for the websites reviewvio.com, dandyautomation.com, and getdandy.com.

## INTRODUCTION

1.  Yelp's mission is to connect consumers with great local businesses by giving them access to reliable and useful information. Consumer trust is a top priority and Yelp takes significant measures to maintain the integrity and quality of the content on Yelp, while working to level the playing field for all businesses.

2.  Access to customer reviews also aids consumers' spending decisions and encourages great service by businesses. *See Edwards v. District of Columbia*, 755 F.3d 996, 1006-7 (D.C. Cir. 2014) ("Further incentivizing a quality consumer experience are the numerous consumer review websites, like Yelp . . . which provide consumers a forum to rate the quality of their experiences"). According to a 2023 survey, more than nine out of ten respondents (93%) say they read online reviews to inform their purchasing decisions.[1]

3.  Deceptive review practices are a concern for Yelp because they threaten to undermine Yelp's usefulness to consumers, tarnish Yelp's reputation, and harm both Yelp and well-meaning businesses that seek to fairly earn their good reputations and do not engage such practices.

4.  Review suppression is a deceptive review practice. Reviewvio engages in this practice by offering "review gating" products or services, through which consumers with positive feedback are invited to write a public review of their experience with a particular business, while criticisms are diverted from publication. Review gating misleads consumers, who may remain

---

[1] Material Survey 2023. This survey was fielded by Material among 2,000 people aged 18+ in the United States. The survey was conducted online during August 2023 and has a margin of error of +/- 2%. Results of any sample are subject to sampling variation. The magnitude of the variation is measurable and is affected by the number of interviews and the level of the percentages expressing the results.

1    unaware when viewing a profile of a particular business that review gating has been employed to

2    suppress critical reviews.

3         5.    Another review suppression technique employed by Reviewvio involves bad faith

4    mass-reporting to Yelp of any critical consumer reviews of a business, in an effort to have them

5    removed and skew a business's overall reviews and ratings.

6         6.    Reviewvio holds itself and Dandy out as "reputation management" companies who

7    falsely claim to be able, for a fee, to remove "bad reviews" and "negative reviews" from Yelp (as

8    well as from other internet platforms).

9         7.    The United States Federal Trade Commission has brought successful enforcement

10   actions against companies engaged in review suppression, but the problem persists.[2] And those

11   engaging in review suppression use techniques to make their conduct difficult to detect, orchestrate

12   it off of platforms like Yelp, and often use technologies like QR codes or Short

13   Message/Messaging Services ("SMS"). On its website here, for example, Reviewvio touts the use

14   of such technologies to "store" negative feedback "confidentially" but share "positive feedback"

15   on "review sites"[3]:

16

17

18

19

20

21

22

23

---

24   [2] Press Release, Fed. Trade Comm'n, Fashion Nova will Pay $4.2 Million as part of Settlement
     of FTC Allegations it Blocked Negative Reviews of Products (Jan. 25, 2022),
25   *https://www.ftc.gov/news-events/news/press-releases/2022/01/fashion-nova-will-pay-42-million-
     part-settlement-ftc-allegations-it-blocked-negative-reviews*. A copy of the FTC's complaint
26   against Fashion Nova is available at
     https://www.ftc.gov/system/files/documents/cases/192_3138_fashion_nova_complaint.pdf.
27

28   [3] *https://getdandy.com/guest-feedback-tools/* (last accessed December 18, 2023).

1
2
3
4
5
6
7
8
9
10
11

# Guest Feedback Wherever Customers Are

Encourage guests to leave their feedback wherever they are. Inside the Dandy Dashboard, merchants can simply print QR codes for each of their locations and place these around their business. Guests can simply scan the QR code, your business captures the customer's information (name, number and email) and the guest leaves their feedback. This feedback and information is stored inside of the Dandy Dashboard. Negative feedback and suggestions are stored confidentially inside the Dandy Dashboard and positive feedback is shared on review sites of your choice, including Google My Business, Tripadvisor and more!

12   Reviewvio also advertises, as shown here, that it can "[p]revent negative reviews and capture
13   positive reviews" using SMS[4]:

14
15
16
17
18
19
20
21
22
23
24



25        8.        Consumers who read online reviews expect an accurate picture of what other
26   consumers think about a particular business based on reviews submitted on an even playing field,
27

28   _____
[4] *https://reviewvio.com/review-prevention-capture/* (last accessed December 18, 2023).

and Reviewvio's efforts at review suppression attempt to artificially distort that picture. This ultimately harms consumers.

## PARTIES

9.     Plaintiff Yelp is a Delaware corporation with its principal place of business in San Francisco, California. Yelp operates a popular website, mobile site, and related mobile applications (collectively, the "Yelp Service") that allow members of the public to read and write reviews of local businesses, government agencies, and other local establishments.

10.     Defendant Reviewvio is a California corporation with a principal business address of 9891 Irvine Center Drive, Suite 200, Irvine, California 92618. According to records maintained by the California Secretary of State, Reviewvio was incorporated on August 20, 2020. According to records maintained by the Office of the Orange County Clerk-Recorder, Reviewvio has filed a Fictitious Business Name Statement and has done business as Dandy since January 12, 2022.

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 15 U.S.C. § 1121, because Yelp's claims arise under the Lanham Act, 15 U.S.C. § 1051, *et seq*. This Court has supplemental jurisdiction over Yelp's state and common law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367 because they are so related to Yelp's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

12.     This Court has personal jurisdiction over Reviewvio because it is a business entity that resides in California, does sufficient business and/or has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California market so as to render the exercise of jurisdiction over it consistent with traditional notions of fair play and substantial justice.

13.     Venue is proper in this Court because Reviewvio consented to the exclusive venue of the state and federal courts located within San Francisco County, California each time that Reviewvio created a Yelp account and each time it logged into its Yelp accounts. Venue is also proper in this Court because San Francisco County is the place of performance of the operative contract between the parties (Yelp's Terms of Service), and therefore a substantial part of the

events or omissions giving rise to the claims occurred in the Northern District of California pursuant to 28 U.S.C. section 1391(b)(2).

**INTRA-DISTRICT ASSIGNMENT**

14.    In accordance with Civil Local Rule 3-2(c), this action is properly assigned on a District-wide basis because it relates to intellectual property.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

15.    Yelp, founded in 2004, owns and operates the Yelp Service for users to share information about their communities. The Yelp Service, among other things, provides and publishes a forum for members of the public to read and write reviews about local businesses, services, and other entities including non-profits and government agencies. One of Yelp's founding principles is that the best source for information about a local community is the community members themselves. Yelp helps the public make more informed choices about local businesses and activities.

16.    Yelp offers free accounts to businesses, which allow them to provide additional information about themselves, message reviewers, post public comments in response to reviews, and view statistics about their Yelp page (such as how many people viewed their Yelp profile, or contacted them through Yelp's mobile applications). Information regarding these free business accounts is available on Yelp.com at https://business.yelp.com/.

17.    As of December 31, 2023, users had posted over 287 million cumulative reviews to Yelp. (Cumulative reviews include those that are currently recommended, not recommended, or removed from Yelp's platform.) These and other statistics about the Yelp Service are available at https://www.yelp-press.com/company/fast-facts/default.aspx.

18.    To support its free services, Yelp sells advertising packages to enable businesses or service providers to promote their offerings on the Yelp Service through the display of ads, as well as other paid features. To promote integrity and objectivity, and as stated on Yelp's website and in its contracts with advertisers, Yelp advertisers cannot delete, change, or re-order reviews. Among other things, Yelp tells its customers that "any purchase of advertising or other paid

features from Yelp will not …allow or enable You, directly or indirectly, to alter reviews or impact whether, where, or how reviews appear on Yelp."

19.     Yelp's business turns on the helpfulness to consumers of the information that it publishes. The Yelp Service has become one of the most popular business review websites on the internet because consumers trust that the reviews are genuine and unbiased. This established trust and goodwill is no accident—Yelp vigilantly protects the legitimacy and authenticity of the reviews on the Yelp Service, at the expense of millions of dollars.

20.     For example, Yelp routinely investigates attempted review gating efforts on its platform as well as other misleading practices that third party reputation management companies often market to local businesses. For years, Yelp has worked with third-party enforcers, including the U.S. Federal Trade Commission and others, to address review gating and other deceptive conduct.

21.     In addition, Yelp also maintains a dedicated User Operations team that protects the integrity of the content that the Yelp community contributes to the platform. When a community member, business owner or Yelp's automated systems alert Yelp's team about a potential issue, a human moderator reviews the case. In 2022, for example, Yelp removed 28% of all reported contributions for violating Yelp policies.[5]

22.     In July 2020, Yelp discovered that Reviewvio was spamming (*i.e.*, sending the same message to many recipients indiscriminately) businesses listed on Yelp to falsely promise the businesses that Reviewvio could permanently remove critical business reviews from the Yelp Service in exchange for a fee. A true and correct copy of an exemplary email from Reviewvio to a business (redacted to protect the information of the business and non-supervisory Yelp employees) and forwarded to Yelp by a confused business owner is attached as **Exhibit A**. Reviewvio also sent dozens of meritless "reports" that certain Yelp reviews violated Yelp's Terms of Service or Content Guidelines to Yelp's registered agent for service of process.

---

[5] Reported contributions removed includes reviews, photos, tips, community Q&As, Connect posts, events, business comments, direct messages, messages to a business and user profiles. Data is sourced from the United States only. Yelp publishes these and other statistics in its Trust & Safety Report, available for download at https://trust.yelp.com/trust-and-safety-report/.

23.    On August 24, 2020, Yelp wrote to Reviewvio to explain that Reviewvio—and anyone acting on its behalf or pursuant to its instructions—is not authorized to access the Yelp Service and to demand that Reviewvio "cease promoting, advertising and/or offering any services relating to Yelp or the Yelp Service, and cease [its] false and misleading representations to the public regarding Yelp and [its] services." Yelp also asked Reviewvio to confirm that it "will comply with these requests." A true and correct copy of Yelp's August 24, 2020 letter is attached as **Exhibit B**.

24.    On August 31, 2020, Reviewvio's representative, Todd Bell, responded unequivocally that "we will comply with your requests." A true and correct copy of Reviewvio's letter (the cover email was sent to Yelp on August 31, 2020, the attached letter was dated September 1) is attached as **Exhibit C**.

25.    Reviewvio's representations were false. Instead of complying with Yelp's requests, starting no later than January 12, 2022—the date it filed its Fictitious Business Name Statement—Reviewvio renewed and expanded its Yelp-related activities using a new name, Dandy, and new websites, getdandy.com and dandyautomation.com, where Reviewvio fraudulently boasts:

      a.    Reviewvio's "customer feedback" tool can capture consumer feedback and information and that "[n]egative feedback and suggestions are stored confidentially inside the Dandy Dashboard and positive feedback is shared on review sites of your choice" (https://getdandy.com/guest-feedback-tools/);

      b.    Yelp is one of the "Platforms [Reviewvio] Integrate[s] With" (https://dandyautomation.com/negative-review-deletion/); and

      c.    Reviewvio can "remove bad reviews" from Yelp (https://dandyautomation.com/negative-review-deletion/).

26.    Yelp last accessed each of the foregoing sites, which contain the above statements on December 18, 2023, prior to filing the initial complaint in this matter.

27.    Reviewvio's deployment of its "customer feedback" tool for use with the Yelp Service constitutes review gating, which is a deceptive review practice because it suppresses critical reviews of the business that purchases the tool. This practice proximately causes injury to

Yelp's commercial interests in its reputation and sales because suppressing a business's critical reviews deprives consumers of potentially useful information and artificially inflates the business's aggregate star rating and online reputation. It also cheats consumers, who may not know that the reviews they read on the Yelp page for the business may not reflect the reviews of all Yelp users. And it undercuts all of the honest businesses profiled on Yelp that do not pay to Reviewvio to intercept critical consumer reviews on their behalf.

28.    Reviewvio's description of its "customer feedback" tool also disparages Yelp because it suggests that Yelp endorses or tacitly allows Reviewvio to attempt to divert critical reviews from appearing on the Yelp Service. Even if Reviewvio's services are unsuccessful at artificially manicuring a business's reputation on Yelp, Yelp must still invest resources, and expend money, to prevent such services from being successful and the advertising of these services harms Yelp's reputation and prevents it from obtaining customers or users it might otherwise obtain.

29.    Reviewvio's descriptions of its services, and its representations about Yelp contained in such descriptions, are also knowingly false and misleading, including because: Reviewvio does not have the ability to remove reviews from Yelp, and because Reviewvio is in no way affiliated with or endorsed by or authorized to integrate with Yelp. Reviewvio cannot remove content from the Yelp Service. These misrepresentations disparage the Yelp Service and proximately cause injury to Yelp's commercial interests in its reputation and sales. Yelp has spent millions to protect the integrity of the Yelp Service and educate business owners that they cannot pay to alter the consumer reviews. Reviewvio's misrepresentations to the contrary cost Yelp advertising sales, both from businesses that Reviewvio diverts to pay Reviewvio to attempt to "remove" or alter Yelp reviews, and from businesses that incorrectly believe that Yelp endorses Reviewvio's misrepresentations, and therefore decline the opportunity to purchase Yelp advertising. For similar reasons, Reviewvio's misrepresentations also cost Yelp users, which in turn means Yelp misses out on contributions and traffic from such individuals, which could otherwise help Yelp obtain advertising clients.

30.    In addition to its fraudulent boasts, Reviewvio also renewed its unauthorized practice of submitting meritless content moderation reports of Yelp reviews, in a further attempt to suppress critical consumer reviews in favor of more positive reviews. For example, since January 1, 2023, Reviewvio has reported tens of thousands of user contributions to Yelp, but Yelp has only removed approximately 4% of the Reviewvio-reported content for violation of Yelp's Terms of Service or Content Guidelines, diverting the members of Yelp's User Operations team from reviewing other reports from authorized Yelp community members and business owners.

31.    Following discovery that Reviewvio had renewed its deceptive and unauthorized practices in 2023, Yelp sent Reviewvio an additional letter on March 1, 2023 to explain that Reviewvio review gating is illegal and that Reviewvio was not authorized to tout any "integration" with Yelp, exploit Yelp's trademarks, or otherwise use the Yelp Service in any way. A true and correct copy of the letter is attached as **Exhibit D**.

32.    An attorney representing Reviewvio, Anton "Tony" N. Handel, responded to Yelp's letters on March 9, 2023. A true and correct copy of the letter is attached as **Exhibit E**.

33.    On March 31, 2023, counsel for Reviewvio spoke with counsel for Yelp and represented that Reviewvio was no longer engaged in the business practices identified in Yelp's March 1, 2023 letter. Counsel for Reviewvio also represented that Reviewvio would, among other things, remove Yelp's trademarks from its websites, as well as its false and misleading representations about Reviewvio's ability to remove reviews from Yelp.

34.    In spite of Reviewvio's March 2023 representations, Reviewvio continues to offer review gating and other review suppression tools to businesses and to make false and misleading representations about Reviewvio's ability to remove reviews from Yelp, falsely tout a non-existent "integration" with Yelp, exploit Yelp's trademarks, and misuse the Yelp Service without authorization.

35.    After Yelp filed its initial complaint in this action, Reviewvio apparently made some cosmetic changes to its websites. But at present, nothing is stopping Reviewvio from reverting to the original versions of its websites, and discovery is required to determine if Reviewvio has stopped using the Yelp Service and falsely affiliating itself with the Yelp Service

1  and the Yelp trademarks identified below, or just stopped advertising the "integration" as publicly

2  as it did before this lawsuit was filed.

3  **YELP'S TERMS OF SERVICE**

4      36.    When a user creates a Yelp account or logs into their existing Yelp account, the

5  user must agree to Yelp's Terms of Service, which govern access to and use of the Yelp Service.

6  Reviewvio has created multiple Yelp accounts and logged into its Yelp accounts many times. As

7  such, Reviewvio has agreed to and is bound by Yelp's Terms of Service. A true and correct copy

8  of Yelp's Terms of Service is attached as **Exhibit F**, and publicly accessible at

9  https://terms.yelp.com/tos/en_us/20200101_en_us/.

10     37.    In doing so, Reviewvio further agreed not to "assist, encourage, or enable others

11  to" violate Yelp's Terms of Service and Content Guidelines. A true and correct copy of Yelp's

12  Content Guidelines is attached as **Exhibit G** and publicly accessible at

13  https://www.yelp.com/guidelines. Reviewvio has breached, and continues to breach, numerous

14  provisions of Yelp's Terms of Service, including Sections 4 and 7 and Section 1 of the Additional

15  Terms for Business Accounts.

16  **YELP'S TRADEMARKS**

17     38.    In addition, Reviewvio has infringed and diluted, and continues to infringe and

18  dilute, Yelp's trademark rights by prominently displaying various federally registered Yelp

19  trademarks on its websites and in its advertising.

20     39.    Yelp is the owner of numerous federally registered trademarks for YELP and

21  related YELP logos (collectively, "the YELP marks"), including the following:

| SERVICE MARK | REGISTRATION NUMBER | SERVICES |
|---|---|---|
| YELP | 3,660,122 | Online social networking services, in International Class 45. |
| YELP | 3,660,119 | Providing online electronic bulletin boards for transmission of messages among computer users concerning rankings, ratings, reviews, referrals, and recommendations relating to business organizations and service providers, in International Class 38. |
| YELP | 3,181,664 | Providing telephone directory information via global communications networks; Providing an |

FIRST AMENDED COMPLAINT

| SERVICE MARK | REGISTRATION NUMBER | SERVICES |
|---|---|---|
| | | online interactive website obtaining users comments concerning business organizations, service providers, and other resources; Providing information, namely, compilations, rankings, ratings, reviews, referrals and recommendations relating to business organizations, service providers, and other resources using a global computer network, in International Class 35. |
|  | 3,938,129 | Providing an online interactive website obtaining users' comments concerning consumer information about businesses, service providers, events, public services and government agencies, parks and recreational areas, religious organizations, and nonprofit organizations; providing consumer information, namely, compilations, rankings, ratings, reviews, referrals and recommendations relating to businesses, service providers, events, public services and government agencies, parks and recreational areas, religious organizations, and nonprofit organizations using a global computer network, in International Class 34 |
|  | 3,660,120 | Providing online electronic bulletin boards for transmission of messages among computer users concerning rankings, ratings, reviews, referrals, and recommendations relating to business organizations and service providers, in International Class 38. |
|  | 3,316,616 | Providing an online interactive website obtaining users' comments concerning consumer information about businesses, service providers, events, public services and government agencies, parks and recreational areas, religious organizations, and nonprofit organizations; providing consumer information, namely, compilations, rankings, ratings, reviews, referrals and recommendations relating to businesses, service providers, events, public services and government agencies, parks and recreational areas, religious organizations, and nonprofit organizations using a global computer network, in International Class 35. |

Case No. 23-cv-6508-WHA

FIRST AMENDED COMPLAINT

40.     Yelp first used Registration Numbers 3,660,122, 3,660,119, 3,181,664, and 3,938,129 in connection with the popular Yelp Service in February 2006. Yelp first used Registration Numbers 3,660,120 and 3,316,616 in connection with the popular Yelp service in November 2006. The YELP marks have all been shown throughout Yelp's websites and/or mobile applications since 2006.

41.     The YELP marks have been famous and distinctive in the United States since at least May 2007—well before Reviewvio's use of the YELP marks began—when the Yelp Service crossed the one million review threshold. That and other information about the use of the YELP marks in connection with the Yelp Service is available in the Yelp newsroom at https://www.yelp-press.com/news/default.aspx.

42.     For example, Yelp also launched its well-known "People Love Us on Yelp" campaign using the YELP marks in 2007, a campaign which has continued every year since. The campaign involves sending window clings in a direct mail batch twice a year to local businesses throughout the United States that qualify for this program.

43.     The window clings have become ubiquitous and are prominently displayed in qualifying local businesses, using the YELP marks and associating them with the Yelp Service, including, in one of its first iterations, as follows:[6]



_____

[6] More information about the initial development of the "People Love Us on Yelp" window clings is available at https://www.forbes.com/sites/quora/2012/11/20/what-is-the-back-story-behind-the-people-love-us-on-yelp-window-sticker-marketing-campaign/?sh=7ba3aece5a25.

44.     The distinctive and famous YELP marks are also commonly associated with the Yelp Service in popular culture. Just recently, they were featured on the February 1, 2024 episode of *The Kelly Clarkson Show*, a nationally televised daytime variety talk show, which aired a segment on the Top 100 Places to Eat in the United States. A still shot from the broadcast is below:



45.     Without Yelp's authorization or approval, the YELP marks are also conspicuously shown throughout Reviewvio's websites in connection with its commercial activities and advertising and are likely to cause confusion; specifically, causing consumers and businesses to incorrectly believe that Reviewvio's services are somehow associated with or sponsored by Yelp. There is no affiliation, connection, or association between Yelp ad Reviewvio, and Yelp did not originate, sponsor, or approve of Reviewvio's services.

46.     For example, Reviewvio advertises a non-existent affiliation with Yelp, using the Yelp burst logo, as one way that Reviewvio's customers or prospective customers can "Grow [Their] Clients With Dandy"[7]:

---

[7]  The excerpts from Reviewvio's websites shown in paragraphs 46 and 47 are at https://getdandy.com/negative-review-deletion/ and https://dandyautomation.com/negative-review-deletion/ (last accessed December 18, 2023).

Case No. 23-cv-6508-WHA
FIRST AMENDED COMPLAINT



47.     In addition,, Reviewvio uses, without authorization, the YELP marks to advertise a supposed "integration" with Yelp, for example at https://dandyautomation.com/negative-review-deletion/:





48.     The YELP marks also appear in Reviewvio's sales and marketing collateral for prospective customers, for example:

49.     Not only does Reviewvio's use of the YELP marks infringe Yelp's trademark rights by causing confusion among consumers and businesses as to Yelp's association with and sponsorship of Reviewvio's services, but they also dilute the YELP marks by associating the YELP marks with services that are not authorized by Yelp, thereby reducing the YELP marks' distinctive character.  Moreover, Reviewvio's uses tarnish the YELP marks because Reviewvio uses them to falsely advertise and promote deceptive review-related services, which run afoul of Yelp's own review policies, and to falsely claim to be able to undermine the integrity of Yelp's platform. Reviewvio's unlawful conduct, and the consequent harm to consumers and Yelp, must be stopped.

## FIRST CAUSE OF ACTION

### Federal Unfair Competition; 15 U.S.C. § 1125

50.     Yelp incorporates by reference the allegations of each and every one of the preceding paragraphs.

51.     The YELP marks are valid, protectable service marks that have been registered as marks on the principal register in the United States Patent and Trademark Office.

52.     Yelp is the owner and registrant of the YELP marks.

53.     Yelp is the owner of all rights in the service marks that are the subject of the YELP mark registrations.

54.    Yelp operates under and uses the trade name "Yelp" in connection with its services.

55.    Reviewvio has made commercial use of the YELP marks and Yelp's trade name.

56.    The nature of Reviewvio's use is likely to cause confusion or mistake, or to deceive consumers into believing there is an affiliation, connection, or association between Yelp and Reviewvio , or to confuse them as to the origin, sponsorship, or approval of Reviewvio's services or commercial activities.

57.    Yelp has not consented to Reviewvio's use of the YELP marks or Yelp trade name.

58.    Reviewvio's unauthorized use of the YELP marks and Yelp trade name was willful.

59.    Reviewvio's acts constitute false statements in connection with products and/or services distributed in interstate commerce, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

60.    Reviewvio's acts have caused and are continuing to cause irreparable injury to Yelp's goodwill and reputation. An award of money damages alone cannot fully compensate Yelp for its injuries, and Yelp lacks an adequate remedy at law.

61.    Yelp is entitled to injunctive relief against Reviewvio, as well as all monetary relief and any other remedies available under the Lanham Act, including but not limited to treble damages and/or actual profits, reasonable attorney's fees, costs, and prejudgment interest, and/or statutory damages.

**SECOND CAUSE OF ACTION**

**Federal Trademark Infringement; 15 U.S.C. § 1114**

62.    Yelp incorporates by reference the allegations of each and every one of the preceding paragraphs.

63.    The YELP marks are valid, protectable service marks that have been registered as marks on the principal register in the United States Patent and Trademark Office.

64.    Yelp is the owner and registrant of the YELP marks.

65.    Yelp is the owner of all rights in the service marks that are the subject of the YELP marks registrations.

66. As described in more detail above, Reviewvio has used the YELP marks in connection with the marketing, promotion and sale of its goods and services without Yelp's consent, in a manner that is likely to cause confusion, or to cause mistake, or to deceive.

67. Reviewvio's infringement of the YELP marks is willful.

68. Yelp has been, and continues to be, severely damaged by Reviewvio's infringement, including by suffering irreparable harm through the diminution of trust and goodwill of Yelp's users. An award of monetary damages alone cannot fully compensate Yelp for its injuries, and Yelp lacks an adequate remedy at law.

69. As a result of Reviewvio's unlawful conduct, Yelp is entitled to an injunction, as set forth below, and an order of destruction of all of Reviewvio's infringing materials.

70. In addition to injunctive relief, Yelp is entitled to all monetary relief and any other remedies available under the Lanham Act, including but not limited to treble damages and/or actual profits, reasonable attorney's fees, costs, and prejudgment interest, and/or statutory damages.

## THIRD CAUSE OF ACTION

### Federal Trademark Dilution; 15 U.S.C. § 1125(c)

71. Yelp incorporates by reference the allegations of each and every one of the preceding paragraphs.

72. The YELP marks are famous trademarks within the meaning of the Anti-Dilution Act, 15 U.S.C. § 1125(c).

73. As a result of Reviewvio's use of the YELP marks to attempt to suppress consumer reviews and its so-called "integration" with Yelp for the purposes of removing "bad reviews" from the platform, over which Yelp has no control, the distinctive qualities of the YELP marks are being and will continue to be diluted, and Yelp's reputation is being and will continue to be harmed.

74. Reviewvio's acts have diluted and will continue to dilute the distinctive nature of the YELP marks through blurring, in violation of 15 U.S.C. § 1125(c).

75. Reviewvio's acts have diluted and will continue to dilute the distinctive nature of the YELP marks through tarnishment, in violation of 15 U.S.C. § 1125(c).

76.    The distinctive nature and reputation of the YELP marks are extremely valuable, and Yelp is suffering and will continue to suffer irreparable harm, blurring, and tarnishment of the YELP marks if Reviewvio's wrongful conduct is allowed to continue.

77.    The dilution of the YELP marks will likely continue unless the Court orders injunctive relief against Reviewvio. An award of monetary damages alone cannot fully compensate Yelp for its injuries, and Yelp lacks an adequate remedy at law.

78.    Yelp is entitled to injunctive relief against Reviewvio, as well as all monetary relief and any other remedies available under the Lanham Act, including but not limited to treble damages and/or actual profits, reasonable attorney's fees, costs, and prejudgment interest, and/or statutory damages.

## FOURTH CAUSE OF ACTION

### Violation of California's Unfair Competition Law ("UCL")

### California Business and Professions Code § 17200, *et seq.*

79.    Yelp incorporates by reference the allegations of each and every one of the preceding paragraphs.

80.    Reviewvio has engaged in unlawful business acts or practices by review gating, spamming businesses with Yelp pages touting its supposed "review removal" services, spamming Yelp with unauthorized reports about user contributions, and the other illegal acts and practices alleged above, all in an effort to gain and provide unfair competitive advantage over honest businesses on Yelp, and to deceive Yelp users and the public at large.

81.    These unlawful business acts or practices were and are committed pursuant to Reviewvio's business activity related to its "reputation management" business offerings.

82.    The acts and conduct constitute fraudulent, unlawful, and unfair competition as defined by California Business and Professions Code § 17200, *et seq.*

83.    Reviewvio has improperly and unlawfully taken and continues to take commercial advantage of Yelp's investment in the Yelp Service. In light of Reviewvio's conduct, it would be inequitable to allow Reviewvio to retain the benefit of the funds obtained though the unauthorized and unlawful use of the Yelp Service.

84.    Yelp is a non-consumer plaintiff and has suffered and is continuing to suffer economic injuries a result of Reviewvio's unfair business practices. *See Lona's Lil Eats, LLC v. Doordash, Inc.,* No. 20-cv-06703-TSH, 2021 U.S. Dist. LEXIS 8930, at *37-38 (N.D. Cal. Jan. 18, 2021) ("A non-consumer plaintiff can allege false advertising claims under the UCL and FAL without alleging its own reliance, as long as the plaintiff has alleged a sufficient causal connection."); *Scilex Pharms. Inc. v. Sanofi-Aventis* U.S. LLC, 552 F. Supp. 3d 901, 915 (N.D. Cal. 2021) (the reasoning of courts holding that a non-consumer plaintiff need not allege its own reliance is "persuasive and correct").

85.    As a result of such unfair competition, Yelp has suffered and is suffering irreparable injury and, unless Reviewvio is enjoined from such unfair competition, will continue to suffer irreparable injury for which Yelp has no adequate remedy at law. Reviewvio should be enjoined from further unlawful, unfair, and deceptive business practices.

## FIFTH CAUSE OF ACTION

### Violation of California's False Advertising Law ("FAL")

### California Business and Professions Code § 17500, *et seq.*

86.    Yelp incorporates by reference the allegations of each and every one of the preceding paragraphs.

87.    California Business and Professions Code Section 17500 provides that it is unlawful for a corporation "to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . ."

88.    Reviewvio's representations, including statements made on its websites, in email marketing, and other written and oral materials it disseminated, contained statements that were false, misleading, or that omitted material information that Reviewvio was under a duty to disclose and which it knew or should have known to be false, misleading, or deceptive. For example,

Reviewvio made and makes false and misleading statements including that it is able to remove "negative reviews" from third-party sites such as the Yelp Service.

89.    These representations are false and misleading, including because Reviewvio does not have the ability to remove reviews from Yelp, and because it is in no way affiliated with or endorsed by Yelp. Reviewvio cannot remove content from the Yelp Service.

90.    The false and misleading advertising described herein presents a continuing threat to Yelp and members of the public in that Reviewvio persists and continues to engage in these practices, and Reviewvio will not cease doing so unless and until forced to do so by this Court.

91.    Yelp is a non-consumer plaintiff and has suffered and is continuing to suffer economic injuries a result of Reviewvio's false and misleading advertising. Yelp is therefore entitled to an injunction.

## SIXTH CAUSE OF ACTION

### Breach of Contract

92.    Yelp incorporates by reference the allegations of each and every one of the preceding paragraphs.

93.    Since at least August 2020, Reviewvio, through its employees and agents, created and used multiple Yelp accounts and thereby agreed to Yelp's Terms of Service.

94.    Yelp's Terms of Service constitute a written agreement between Reviewvio and Yelp.

95.    Yelp has performed all conditions, covenants, and promises required of it in accordance with Yelp's Terms of Service.

96.    Beginning no later than August 2020, Reviewvio has materially breached and continue to materially breach Yelp's Terms of Service, including at least Sections 4, 7 and Section 1 of the Additional Terms for Business Accounts, as follows:

a.    Reviewvio is in breach Section 4(A) because Yelp banned Reviewvio in August 2020, but Reviewvio has continued to access the Yelp Service in order to take Yelp content for use with Reviewvio's products and services and to submit the meritless content moderation reports described above. Reviewvio's conduct has

cost and continues to cost Yelp hundreds of person hours in reviewing its meritless reports.

b.  Reviewvio is in breach of Section 7(B)(ii) because Reviewvio's practices are efforts to assist, encourage or enable others to refrain from posting or removing reviews. Reviewvio's conduct has cost Yelp the reputational and sales injuries described above.

c.  Reviewvio is in breach of Section 7(B)(v) because Reviewvio uses the Yelp Service to promote its own business or commercial venture without Yelp's authorization, which has cost Yelp the person hours and reputational and sales injuries described above.

d.  Reviewvio is in breach of Section 7(B)(viii) because Reviewvio violates the law by review gating, costing Yelp the reputational and sales injuries described above.

e.  Reviewvio is in breach of Section 7(B)(ix) because Reviewvio exploits the Yelp Service or Yelp Service Content without Yelp's authorization, costing Yelp the person hours and reputational and sales injuries described above.

f.  Reviewvio is in breach of Section 7(B)(x) because Reviewvio uses an automated device, process or means to access, retrieve, copy, scrape, or index content from the Yelp Service without Yelp's permission in order to facilitate its meritless content moderation reports and other Yelp-related products and services, costing Yelp valuable person hours as described above.

g.  Reviewvio is in breach of Section 7(B)(xiv)) because Reviewvio uses an automated device, process or means to access, retrieve, copy, scrape, or index content from the Yelp Service without Yelp's permission for purposes of building its own searchable database of Yelp content for use with Reviewvio's meritless content moderation reports and other Yelp-related products and services, costing Yelp valuable person hours as described above.

FIRST AMENDED COMPLAINT

h.  Reviewvio is in breach of Section 1(B)(iv) of the Additional Terms for Business Accounts because, in exchange for payment, its review gating tools induce others to refrain from posting reviews to the Yelp platform, costing Yelp the reputational and sales injuries described above.

i.  Reviewvio is in breach of Section 1(B)(vii) because it uses the YELP marks without Yelp's permission, costing Yelp the reputational and sales injuries described above.

97.  Reviewvio's material breaches have caused Yelp to incur damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Yelp respectfully prays that the Court enter judgment as follows:

1.  That Reviewvio engaged in unfair competition, infringement, and dilution through its use of the YELP marks;

2.  That Reviewvio's trademark infringement was knowing and willful and committed with bad faith and intent to deceive and that this case is exceptional under 15 U.S.C. § 1117(a);

3.  That Reviewvio engaged in unfair competition and false advertising and breached Yelp's Terms of Service by engaging in the unlawful conduct described above;

4.  That the Court enter an order enjoining and restraining Reviewvio and all persons or entities acting as agents of or in concert with Reviewvio, during the pendency of this action and thereafter, from:

a.  infringing or diluting the YELP marks in any way, including but not limited to through or on Reviewvio's websites and sales and marketing collateral;

b.  accessing or attempting to access the Yelp Service and/or any Yelp computer systems or information on the Yelp Service or any Yelp computer systems;

c.   initiating, sending, or procuring the initiation or sending of any unsolicited commercial message to Yelp or any Yelp user regarding Reviewvio's business practices described above;

1            d.  engaging in activity that violates Yelp's Terms of Service; including but not

2    limited to (i) offering Yelp review suppression products or services, (ii)

3    promoting businesses or commercial ventures in connection with the Yelp

4    Service, (iii) sending unsolicited commercial messages to Yelp users, and (iv)

5    recording, processing, or mining any information about Yelp users;

6        5.    That Yelp be awarded actual damages and Reviewvio's profits;

7        6.    That Yelp be awarded statutory damages and/or penalties;

8        7.    That Yelp be awarded its reasonable attorney's fees and costs, as well as

9    prejudgment interest to the extent available under the law;

10       8.    That Yelp be awarded treble and punitive damages; and

11       9.    That Yelp be granted such other and further relief as the court deems just and

12   proper.

13

14   DATED: MARCH 1, 2024                              RESPECTFULLY SUBMITTED,

15                                                     YELP INC.

16

17                                                     */s/ James Daire*_____
                                                       JAMES DAIRE
18                                                     Attorney for Plaintiff
                                                       YELP INC.
19

20

21

22

23

24

25

26

27

28

1

## DEMAND FOR JURY TRIAL

2          Yelp requests a jury trial.

3

4    DATED: MARCH 1, 2024                    RESPECTFULLY SUBMITTED,

5                                            YELP INC.

6

7                                            _/s/ James Daire_____

8                                            JAMES DAIRE
                                             Attorney for Plaintiff
                                             YELP INC.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28