1

2

3

4

5

6                      UNITED STATES DISTRICT COURT

7

8                      NORTHERN DISTRICT OF CALIFORNIA

9

10  YELP, INC.,                                No.  C 23-06508 WHA

11              Plaintiff,                     **ORDER RE MOTION TO DISMISS**
                                               **AND MOTION TO STRIKE**
12        v.

13  REVIEWVIO, INC., d/b/a DANDY,

14              Defendant.

15

16                              **INTRODUCTION**

17        In this trademark action, defendant moves to dismiss the first amended complaint or,

18  alternatively, to strike allegations.  For the following reasons, the motion to dismiss is

19  **GRANTED IN PART AND DENIED IN PART** and the motion to strike is **DENIED**.

20                               **STATEMENT**

21        Yelp, Inc. filed a complaint against ReviewVio, Inc. for unfair competition, trademark

22  infringement, and trademark dilution under federal law, as well as for unfair competition, false

23  advertising, and breach of contract under California law (Amd. Compl. ¶¶ 50–97).  Both Yelp

24  and ReviewVio are headquartered in California (*id.* ¶¶ 9–10).

25        Yelp offers a service for businesses to advertise to consumers, and for consumers to

26  review businesses (and discover new ones) (*id.* ¶¶ 1–2).  Since Yelp's founding in 2004,

27  consumers have posted over 280 million reviews (*id.* ¶¶ 15, 17).

28

*United States District Court*
*Northern District of California*

Yelp has used federally registered trademarks since 2006 (*id.* ¶ 40).  Those marks include Yelp's trade name and its "burst" logo (*id.* ¶ 39).  The marks have appeared online, on the windows of businesses that use Yelp-provided "clings" to tout "People Love Us on Yelp," and even on national television programs featuring top-reviewed restaurants (*id.* ¶¶ 42–44).

To support its free services, Yelp sells ads and "paid features" to businesses (*id.* ¶ 18). Its ad sales depend at least partly on the audience ads reach (*id.* ¶ 29).  For a business or consumer to create a Yelp account, they must agree to its Terms of Service (*id.* ¶ 36).

ReviewVio, incorporated in 2020, also sells services to businesses (*id.* ¶¶ 4, 10).  It markets services "integrate[d] with the most popular review platforms," including Yelp (*id.* ¶ 48).  Those services allegedly help businesses:

- gather feedback from patrons — positive or negative — before posting only positive feedback to "review sites of your choice," a practice Yelp characterizes as "review gating" (*id.* ¶¶ 4, 7, 25), and
- "remove bad reviews" from sites like Yelp, which Yelp says entails bombarding Yelp with requests to remove legitimate but negative reviews (*id.* ¶¶ 5, 30).

ReviewVio allegedly uses Yelp's marks to market ReviewVio's services (*id.* ¶¶ 46–48). To provide the services it touts as "[i]ntegrat[ed]" with Yelp, ReviewVio has created and logged into ordinary Yelp accounts, and submitted tens of thousands of removal requests to Yelp (*id.* ¶¶ 30, 36).  When Yelp revoked ReviewVio's access, ReviewVio began doing business under a new name, Dandy, and restarted the practices (*id.* ¶ 25).

ReviewVio's advertisements using Yelp's marks harm Yelp financially and reputationally (*id.* ¶¶ 22, 27–29).  Businesses that pay Yelp for services might now pay less: Rather than pay Yelp for ads to promote themselves on Yelp, they might pay ReviewVio for disproportionately positive reviews to do so (*id.* ¶ 29), particularly if they believe ReviewVio is integrated with Yelp to provide this alternative path to prominence (*id.* ¶¶ 46–48).  Worse, the businesses instead might come to see prominence on Yelp as not worth paying for at all, believing from ReviewVio's marketing that Yelp's game is rigged (*see id.* ¶¶ 27–29). Maintaining traffic to Yelp's site (and resulting ad revenues on its site) depends on businesses

2

United States District Court
Northern District of California

1   and individual reviewers trusting that reviews on Yelp are representative — not rigged to

2   create five-star ratings (*ibid.*).  Yelp also alleges it puts time and treasure towards preventing

3   practices like ReviewVio's (*id.* ¶¶ 20–21, 28, 30).  This investment includes activities to

4   support investigations by the Federal Trade Commission (*id.* ¶¶ 7, 20), which has put

5   companies offering review management services "on notice that avoiding the collection or

6   publication of negative reviews violates the [Federal Trade Commission] Act."

7                                              **ANALYSIS**

8        This order addresses the motion to dismiss (Parts 1–8), then the motion to strike (Part 9).

9   **1.    THE MOTION TO DISMISS:  LEGAL STANDARD.**

10       To survive dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a

11   claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

12   (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

13   the court to draw the reasonable inference that the defendant is liable for the misconduct

14   alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The pleadings include "the complaint

15   itself and its attached exhibits, documents incorporated by reference, and matters properly

16   subject to judicial notice."  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir.

17   2014).  From the pleadings, the court may strip away legal conclusions couched as factual

18   allegations.  *Twombly*, 550 U.S. at 555.  So long as the remaining factual allegations suggest

19   more than a "sheer possibility" that defendant acted unlawfully, the motion must be denied and

20   plaintiff may develop its case.  *Iqbal*, 556 U.S. at 678.

21       Claims sounding in fraud are subject to heightened pleading under Rule 9(b).  Only the

22   elements of a claim invoking fraud must be pled with specificity; if the claim on the whole

23   invokes a fraudulent course of conduct, however, then every element must be pled with

24   specificity.  *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103–05 (9th Cir. 2003).  While the

25   Ninth Circuit has not squarely decided that Rule 9(b) applies to Lanham Act claims, several of

26   its district courts have reasoned that, "where a Lanham Act claim is predicated on the theory

27   that the defendant engaged in a knowing and intentional misrepresentation, then Rule 9(b) is

28   applicable."  *E.g.*, *23andMe v. Ancestry.com*, 356 F. Supp. 3d 889, 908 (N.D. Cal. 2018)

1   (Judge Edward M. Chen).  Here, Yelp's first, fourth, and fifth claims for relief — unfair

2   competition under the Lanham Act, unfair competition under California law, and false

3   advertising under California law — invoke ReviewVio's "false statements," "fraud[]" and

4   "false advertising," and "false and misleading statements," respectively (Amd. Compl. ¶¶ 59,

5   82, 84, 88).  These claims or their relevant elements invoking fraud must meet Rule 9(b).

6          **2.   LANHAM ACT:  UNFAIR COMPETITION UNDER § 1125(a).**

7        Yelp's complaint first alleges unfair competition under 15 U.S.C. § 1125(a) (Amd.

8   Compl. ¶¶ 50–61).

9                        *A.   STANDING.*

10        At the threshold, ReviewVio contends Yelp lacks standing under this section for failing

11   to allege injury with particularity (*see* Br. 14).  Yelp counters that ReviewVio fails to apply the

12   right law to the right allegations (*see* Opp. Br. 8–12).  This order agrees.

13        To assert claims under the Lanham Act's unfair competition provisions, "a plaintiff must

14   plead (and ultimately prove) an injury to a commercial interest in sales or business reputation

15   proximately caused by the defendant's misrepresentations."  *Lexmark Int'l, Inc. v. Static*

16   *Control Components, Inc.*, 572 U.S. 118, 140 (2014).  The Supreme Court's analysis, while

17   directly addressing a false advertising claim under § 1125(a), is broad enough to cover

18   standing for false association claims under § 1125(a).  *See id.* at 122, 128, 137–40.  ReviewVio

19   fails to reason persuasively otherwise even on reply (Br. 2, 14; Reply Br. 3–5).  Here, the

20   complaint alleges that Yelp's business customers have been confused by ReviewVio's use of

21   Yelp's marks — and that this injures Yelp's reputation, increases Yelp's costs, and potentially

22   reduces Yelp's ad and service sales (Amd. Compl. ¶¶ 22, 27–30).  This sufficiently alleges

23   commercial injuries proximately caused by ReviewVio.

24        ReviewVio's argument that Yelp did not suffer *proximate* injury because it did not

25   *compete* with ReviewVio (*see cf.* Br. 14, 16; Reply Br. 3) is wrong on the allegations and the

26   law.  The argument fails to grapple with allegations:  Yelp sells services to businesses *to*

27   *increase prominence* on Yelp through ads, whereas ReviewVio sells services to businesses *to*

28   *increase prominence* on Yelp through review gating — making reasonable the inference that

*United States District Court*
*Northern District of California*

4

both services compete for revenues from the same businesses (*see, e.g.*, Amd. Compl. ¶¶ 22, 27–29).  At oral argument, counsel for ReviewVio characterized the complaint as alleging that "Yelp's own customers subscribe to the ReviewVio platform" (Tr. 2:08; *see also id.* at 3:18). The allegations make plausible that Yelp may lose customers — and customers' reviews, which it monetizes — in direct relationship to the misrepresentations ReviewVio makes to those customers.  Thus, even if ReviewVio is correct that *Lexmark* provides standing only to claimants suffering "one-to-one" losses (*e.g.*, Reply Br. 2–4; Tr. 8:20), the complaint's allegations still provide Yelp standing (*e.g.*, Tr. 33:15).  Regardless, ReviewVio is also wrong on the law:

> [A] rule categorically prohibiting all suits by noncompetitors would read too much into the [Lanham] Act's reference to "unfair competition" . . . . [T]here need be no competition in unfair competition, just as there is no soda in soda water, no grapes in grapefruit, no bread in bread fruit, and a clothes horse is not a horse but is good enough to hang things on.

*Lexmark*, 572 U.S. at 136 (cleaned up).  Yelp adequately asserts standing to bring unfair competition claims under § 1125(a).

## B.   THE CLAIM ELEMENTS.

Section 1125(a) provides relief from false association, and from false advertising.  *See Lexmark*, 572 U.S. at 122.  Only on reply does ReviewVio contend that Yelp's complaint fails to specify the style of claims Yelp brings under § 1125(a), assuming such failure should matter (Reply Br. 4–5).  The relevant claim includes paragraphs asserting false "affiliation" and "origin" (Amd. Compl. ¶ 56).  It also incorporates the immediately preceding paragraph asserting false "advertising" (*id.* ¶¶ 49–50).  The complaint thus puts ReviewVio on notice to defend both theories, provided the complaint alleges sufficient facts.  *See Twombly*, 550 U.S. at 555.  Indeed, ReviewVio makes arguments attacking both styles of claims, including ones attacking the parallel California false association and false advertising claims.  And at oral argument, when ReviewVio's counsel emphasized false advertising, Yelp's counsel emphasized that false association provided a separate theory (*e.g.*, Tr. 37:20).  This order turns first to false advertising, then to false association.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

(i)      *False Advertising Under § 1125(a)(1)(B).*

To claim false advertising under the Lanham Act, a complaint must allege:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Yelp adequately alleges each element, even if Rule 9(b) applies.

*First*, the complaint alleges that ReviewVio advertised its services by touting that it "[i]ntegrat[ed]" with Yelp (Amd. Compl. ¶¶ 47–49) and "could remove critical business reviews" from Yelp (*id.* ¶ 22). The complaint asserts ReviewVio lacked such capabilities (*id.* ¶¶ 29, 47). ReviewVio could at best log onto Yelp as an ordinary user and petition Yelp to remove reviews through an agent (*e.g.*, *id.* ¶¶ 22–23, 30, 36) — and later not even that. Indeed, Yelp ultimately revoked ReviewVio's authorization to log in and to send removal requests (*id.* ¶ 23). ReviewVio nonetheless continued touting its "[i]ntegration[]" and review-removal abilities (*id.* ¶¶ 25, 34). ReviewVio does not contend the alleged representations about its services amounted to puffery. Nor does it argue its representations about its services (and Yelp's) were true. Indeed, ReviewVio fails to contest meaningfully that this element of false advertising is met (*e.g.*, Br. 13–14; *cf. id.* at 11–12 (addressing state law)). It is met.

*Second*, although ReviewVio nakedly asserts the complaint fails to allege any deception of "the public" (*id.* at 15), the complaint alleges that at least one business owner in the relevant audience was misled (*see* Amd. Compl. ¶ 22). Where plaintiff alleges defendant cast a wide net of false marketing and shows at least one "actually deceived" catch, plaintiff can prevail on a motion to dismiss. *See Southland Sod Farms*, 108 F.3d at 1139. ReviewVio might have argued that the fish Yelp found was not fooled — that the one business owner was *not deceived* so much as *disturbed* by ReviewVio's marketing (*cf.* Amd. Compl. ¶ 22 & Exh. A).

ReviewVio did not squarely argue this point (*cf.* Br. 6 (implying contrary evidence exists in pleadings)).  Regardless, the result would have been the same:  Plaintiff may survive a motion to dismiss by showing that defendant's widely cast net has "the tendency to deceive," without yet showing actual deception.  *See Southland Sod Farms*, 108 F.3d at 1139; *Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*, No. C 08–3931 RS, 2009 WL 55178, at *4 (N.D. Cal. Jan. 7, 2009) (Judge Richard Seeborg).  For these reasons and others further described in Part 3, Yelp's complaint alleges this element adequately.

*Third*, and for similar reasons, the complaint adequately alleges that misstatements are likely to influence customer purchasing decisions (Amd. Compl. ¶¶ 22, 29).  ReviewVio boldly contends that the complaint fails to allege "[Yelp] and ReviewVio share customers or potential customers" whose decisions might be influenced by ReviewVio's marketing (*see* Br. 16).  Not so.  The two share customers, as counsel for ReviewVio belatedly concedes (*e.g.*, Tr. 2:08).  And the allegations make plausible that ReviewVio's alleged marketing influences their choice to purchase Yelp's ad services, ReviewVio's review management services, or no services to promote themselves at all — believing the game rigged (*e.g.*, Amd. Compl. ¶¶ 22, 29).

Yelp likewise prevails on the remaining elements.  For the *fourth* element, ReviewVio nowhere denies putting the purported statements into commerce through mailings, sales materials, and websites (*compare id.* ¶¶ 22, 46–48, *with* Br. 13–14).  And for the *fifth* element, ReviewVio ignores reputational and economic injuries the complaint adequately alleges, including loss in revenue for paid ads and services (Amd. Compl. ¶¶ 29).  Yelp's allegations make economic damages plausible; its complaint need not tally nor prove them.

All elements are furthermore pled with particularity under Rule 9(b).  "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106 (internal quotation marks omitted).  Yelp alleges who made the statements (ReviewVio), to whom (businesses currently or potentially appearing on Yelp), what the statements represented (e.g., that ReviewVio "integrat[ed]" with Yelp to publish positive reviews and remove negative ones), where and how they were made (on ReviewVio's website and mailings, including under its business name Dandy), and when (2020 mailings and

2022–2023 websites (Amd. Compl. ¶¶ 22, 25–26, 46–47 & n.7)). *See Lona's Lil Eats, LLC v. DoorDash*, No. 20-cv-06703-TSH, 2021 WL 151978, at *6 (N.D. Cal. Jan. 18, 2021) (Judge Thomas S. Hixon).

### (ii)    *False Association or Designation Under § 1125(a)(1)(A).*

Claiming false association under the Lanham Act requires showing that defendant, "on or in connection with any goods or services,  .  .  . uses in commerce any word, term, name, symbol, or device  .  .  . likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association" with plaintiff's goods or services.  15 U.S.C. § 1125(a)(1)–(a)(1)(A).  ReviewVio does not meaningfully contest that it commercially used Yelp's mark in its services.  Rather, ReviewVio denies only that the complaint fails to allege that using Yelp's mark likely causes confusion (Br. 15–16).

The complaint adequately alleges that ReviewVio's business customers might mistakenly believe Yelp is affiliated with ReviewVio.  One of the complaint's visual allegations shows ReviewVio's placement of its mark, Yelp's mark, and the word "[*i*]*ntegration*[]" all on one sales slide touting ReviewVio's services (Amd. Compl. ¶ 48 (emphasis added)).  ReviewVio does not deny the slide's authenticity.  Plausibly, a ReviewVio customer could view Yelp's mark as referring not merely to Yelp's services but to an "[i]ntegration[]" or association between Yelp and ReviewVio.  *Cf. Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 889, 897 & n.11 (9th Cir. 2019) (considering when consumers might view defendant's use of plaintiff's mark as referring to something more than plaintiff's services).  "[I]t is a rare situation in which granting a motion to dismiss is appropriate when a case involves questions of [customer] confusion  .  .  .  ." *Id.* at 897 (internal quotation marks omitted).  ReviewVio fails to show why its situation is exceptional.  For these reasons and others described in Part 3, Yelp's complaint adequately alleges likely confusion.

And for reasons like those addressed above in the false advertising claim, the claim for relief from false association also satisfies Rule 9(b).

1    Subject to the provisos in Part 8, ReviewVio's motion to dismiss the false advertising and

2    false association claims under § 1125(a) is **DENIED**.

3        **3.    LANHAM ACT:  TRADEMARK INFRINGEMENT UNDER § 1114.**

4        Yelp's complaint next alleges trademark infringement under 15 U.S.C. § 1114(1) (Amd.

5    Compl. ¶¶ 62–70).  This section "provides a cause of action for the owner of a registered

6    trademark against any person who, without consent of the owner, uses the trademark in

7    commerce in connection with the sale or advertising of goods or services, when such use is

8    likely to cause confusion."  *Marketquest Grp. v. BIC Corp.*, 862 F.3d 927, 932 (9th Cir. 2017),

9    *cert. denied*, 584 U.S. 977 (2018).  ReviewVio concedes the complaint adequately alleges that

10   ReviewVio advertises using Yelp's registered marks (*see, e.g.*, Br. 5, 13–18).  ReviewVio

11   contests only whether this suffices to allege likely confusion.

12       Once again, ReviewVio focuses on defeating just one claim element — likelihood of

13   confusion — and comes up short.  Whether confusion is at issue under unfair competition or

14   infringement, the inquiry is the same.  *Slep-Tone Ent. Corp. v. Wired for Sound Karaoke & DJ*

15   *Servs., LLC*, 845 F.3d 1246, 1249 (9th Cir. 2017).  This order supports the conclusions above

16   by now addressing parties' confusion arguments fully.  This analysis is especially needed

17   because parties' oral arguments addressed an affirmative defense that, if complete on the face

18   of the complaint, merits dismissal of trademark claims (including state law counterparts).  *See*

19   *Applied Underwriters*, 913 F.3d at 887, 893 & n.6.

20        *A.    LIKELY CONFUSION UNDER SLEEKCRAFT.*

21       In their briefing, both parties addressed some of the up to eight *Sleekcraft* factors that

22   ordinarily determine likely confusion (Br. 15–17; *see* Opp. Br. 12–15):

23           (1) strength of [plaintiff's] mark; (2) proximity[/relatedness] of
             [plaintiff's and defendant's] goods; (3) similarity of the marks;
24           (4) evidence of actual confusion; (5) marketing channels used;
             (6) type of goods and the degree of care likely to be exercised by
25           the purchaser; (7) defendant's intent in selecting [its] mark; and
             (8) likelihood of expansion of the product lines.
26

27   *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (discussing *AMF Inc. v.*

28   *Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979)).  A court need not consider every

United States District Court
Northern District of California

1    factor listed — and can consider unlisted ones.  *See id.* at 632–33.  "[T]he similarity of the

2    marks and whether the two companies are direct competitors" are "always" critical factors,

3    however.  *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th

4    Cir. 1999).  Parties initially focused on those two, as does this order.

5           ReviewVio chiefly argues in briefing that the complaint does not adequately allege that

6    the services are related (*see* Br. 15–17; *see also* Reply Br. 5–6).  Accepting as true that

7    ReviewVio touted an "[i]ntegration[]" with Yelp (Amd. Compl. ¶ 48), the inference that the

8    services are related is unavoidable.  Further allegations suggest the services compete:

9    Customers who buy ReviewVio's services to promote themselves on Yelp (i.e., review

10   management) may not buy Yelp's services to promote themselves on Yelp (i.e., ads) (*see id.*

11   ¶ 29).  ReviewVio's contention that it does not compete with Yelp therefore oversimplifies the

12   two services' alleged activities (*e.g.*, Br. 13; Reply Br. 3–4; Tr. 4:13, 34:20).  Courts must not

13   "overemphasize[] differences in principal lines of business" when analyzing relatedness.

14   *Brookfield*, 174 F.3d at 1056.

15          As for similarity of marks, Yelp's complaint alleges that ReviewVio uses not just similar

16   marks, but Yelp's marks (Amd. Compl. ¶¶ 45–49).  ReviewVio does not challenge the

17   sufficiency of those allegations (*e.g.*, Br. 5), nor the allegations supporting any other *Sleekcraft*

18   factor.  And when "the alleged infringer compete[s] for sales with those of the trademark

19   owner, infringement usually will be found if the marks [used] are sufficiently similar."  599

20   F.2d at 348.  The complaint permits the inference of likely confusion, assuming *Sleekcraft*

21   applies.

22                    **B.    LIKELY CONFUSION UNDER NEW KIDS.**

23                           **(i)    *Invoking* New Kids.**

24          At our hearing, however, parties raised factors from a different set altogether.  And this

25   order agrees the alternative set applies to this complaint.  Instead of the *Sleekcraft* factors, the

26   *New Kids* factors apply "where a defendant has used the plaintiff's mark to describe the

27   plaintiff's product, even if the defendant's ultimate goal is to describe his own product."

28   *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002) (emphasis omitted)

United States District Court
Northern District of California

10

(discussing *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992)). For instance, the *New Kids* factors apply when a car repair shop explains *what it repairs* by using Volkswagen's name. *Id.* at 1152 (discussing *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350 (9th Cir. 1969)). The *New Kids* factors are tailored to address these so-called nominative uses of marks which, if non-confusing, can inform consumers and increase competition. *See* 971 F.2d at 308. Plaintiff can still show likely confusion, but must now do so by showing one or more *New Kids* factors is *not* met:

> [1] the product or service in question must be one not readily identifiable without use of the trademark; [2] only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and [3], the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*Ibid.* (footnote omitted). Typically, defendant triggers *New Kids* by asserting, as a defense, that it used plaintiff's marks merely to describe plaintiff's services. *See Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175, 1183 (9th Cir. 2010); *Applied Underwriters*, 913 F.3d at 887, 893. ReviewVio's briefing hints at the defense, underscoring what "the [complaint] itself indicates [about] ReviewVio's [ads and its] advertised services" (*cf.* Br. 5).

ReviewVio clearly invoked this defense at oral argument, if not in its briefing — and reasonably so, as defending against the face of Yelp's complaint without invoking nominative use risked farce. ReviewVio's counsel said:

> [Yelp contends] we use Yelp's marks in commerce, and that's just completely false. We don't offer the same services whatsoever. I'll direct your honor to . . . Yelp's opposition to the motion to dismiss with a screenshot [Opp. Br. 14] which is again ReviewVio's website — business-facing for its services — where it lists as many of the services that you can use for businesses: Yelp, TripAdvisor, Google My Business, Facebook Business Manager. It's very clear that there's no association with Yelp — because all of the review services [listed on ReviewVio's website] are an option for these potential businesses.

(Tr. 35:10). In other words: ReviewVio used Yelp's marks to refer to Yelp's service — just as it used Facebook's marks to refer to Facebook's service. ReviewVio's customers would plainly understand that those are "services that you can use" as "option[s]," separately or alongside ReviewVio's services, which are not "the same services whatsoever." Customers

11

1    would thus understand "very clear[ly] that there's no association with Yelp."  This is a

2    nominative use defense, and answering it — assuming it is present on the complaint's face —

3    requires addressing *New Kids*.  *Applied Underwriters*, 913 F.3d at 887, 893.

4         And address *New Kids* Yelp did.  Yelp's counsel said:

5              [ReviewVio] says [Yelp's name and Facebook's name is] just
               listed on [ReviewVio's] screenshots.  No, it's not just listing Yelp.
6              It's saying, "We have an integration with Yelp."  And it's using
               our logo and our stylized wordmarks.  That's directly what's at
7              issue in a false association claim.

8    (Tr. 37:00).  The argument that ReviewVio did something alongside the mark to suggest an

9    affiliation — by touting an "integration" — hits *New Kids*'s third factor.  *See* 971 F.2d at 308.

10   And the argument that ReviewVio used more than was necessary of Yelp's marks — by using

11   stylized logos — hits *New Kids*'s second factor.  *See ibid.*

12        ReviewVio may raise these arguments even in this posture because the complaint facially

13   alleges the elements triggering the application of *New Kids* (*cf.* Br. 5).  *See Applied*

14   *Underwriters*, 913 F.3d at 887, 893.  Unless the complaint also raises the elements overcoming

15   the *New Kids* defense, the complaint fails to state a claim.  *See ibid.*  "A complaint is subject to

16   dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not

17   entitled to relief," whether because of an "affirmative defense" or otherwise.  *Jones v. Bock*,

18   549 U.S. 199, 215 (2007); *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013).  Among

19   many other similar allegations, the complaint asserts that the "[r]epresentations about Yelp [at

20   issue were] contained in [ReviewVio's] descriptions [of ReviewVio's services]" (Amd. Compl.

21   ¶ 29).  In short, the complaint's charge is this: ReviewVio may be using Yelp's marks to refer

22   to Yelp's services in order to describe its own, but it is *mis*representing Yelp's services as it

23   does so — and misleading consumers into believing those services are affiliated with

24   ReviewVio's (*see, e.g.*, *ibid.*).  *New Kids* applies to defendant's descriptive uses of plaintiff's

25   mark "*even if the defendant's ultimate goal is to describe his own product*."  *Cairns*, 292 F.3d

26   at 1151.  Unsurprisingly, the complaint also alleges factors overcoming the defense.

27

28

United States District Court
Northern District of California

12

1

### (ii)    *Applying* New Kids.

2          At issue in the nominative use inquiry is whether ReviewVio's use of Yelp's mark

3   confuses consumers into believing that ReviewVio — beyond repairing businesses' reputations

4   on Yelp, or beyond offering a cheaper alternative for promoting oneself on Yelp — is *affiliated*

5   with Yelp.  *See, e.g.*, *Cairns*, 292 F.3d at 1152 (discussing descriptive use of marks by product

6   repairers and low-priced rivals).  To survive dismissal, the complaint need allege facts

7   sufficient to make plausible that at least one *New Kids* condition is *not* met.  *See Applied*

8   *Underwriters*, 913 F.3d at 893; *Axon Enter. v. Luxury Home Buyers, LLC*, No. 2:20-cv-01344-

9   JAD-MDC, 2024 WL 166693, at *3 (D. Nev. Jan. 16, 2024) (Judge Jennifer A. Dorsey).

10         Yelp's complaint on its face adequately alleges that the second and third *New Kids*

11  conditions are not met.  As to the second condition, the complaint alleges that ReviewVio used

12  not only Yelp's trade name but Yelp's marks (*e.g.*, Amd. Compl. ¶¶ 45–49, 57).  As to the

13  third, the complaint alleges that ReviewVio used Yelp's marks while touting an

14  "[i]ntegration[]" (*id.* ¶ 48).  This alleged statement "in conjunction with the mark" plausibly

15  causes consumers to believe ReviewVio enjoys at least "sponsorship or endorsement by

16  [Yelp]."  *See New Kids*, 971 F.2d at 308.  ReviewVio does not meaningfully challenge the

17  sufficiency of the complaint as to the extent of marks used and the effect of adjacent words like

18  "[i]ntegration[]."  Thus, the complaint adequately alleges likely confusion under *New Kids*.

19         In sum, ReviewVio's assertions — that the complaint alleges only that ReviewVio used

20  Yelp's marks descriptively — triggers the use of *New Kids*.  Under its factors, and in any case

21  under *Sleekcraft*'s factors, Yelp's complaint adequately alleges likely confusion.  Because

22  ReviewVio challenges no other element of the infringement, ReviewVio's motion to dismiss

23  the infringement claims under § 1114 is — subject to the provisos in Part 8 — **DENIED**.

24      **4.    FEDERAL TRADEMARK DILUTION ACT:  TRADEMARK DILUTION**
            **UNDER § 1125(c).**
25

26         Covering all trademark's corners, Yelp's complaint also alleges dilution under 15 U.S.C.

27  § 1125(c) (Amd. Compl. ¶¶ 71–78).  "Dilution may occur where use of a trademark whittles

28  away the value of a trademark by blurring [its] uniqueness" or "by tarnishing [it] with negative

United States District Court
Northern District of California

13

associations." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 812 (9th Cir. 2003) (cleaned up). "Tide Motor Oil," for instance, might impair how "Tide" invokes its product (detergent) or evokes its qualities (cleanliness). *See Visa v. JSL Corp.*, 610 F.3d 1088, 1089 (9th Cir. 2010). To prove dilution,

> a plaintiff must show that (1) [its own] mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment.

*Jada Toys*, 518 F.3d at 634.

Here, ReviewVio does not dispute the complaint's sufficiency as to ReviewVio's commercial use of Yelp's distinctive marks during the relevant period (*see* Br. 17–18; Opp. Br. 16 & n.7). Rather, ReviewVio disputes the complaint's sufficiency as to the Yelp marks' *fame* and how using the marks *blurs or tarnishes* them (*ibid.*).[1]

### (i)     Fame.

"[T]o meet the 'famousness' element of protection under the dilution statutes, a mark must be truly prominent and renowned." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999) (cleaned up). Factors for assessing fame include the reach of "publicity" and "actual recognition." 15 U.S.C. § 1125(c)(2)(A)(i), (iii). Marks meriting protection have included "eBay" and "Nike."[2]

The complaint alleges Yelp's marks became "famous and distinctive in the United States since at least May 2007" (Amd. Compl. ¶ 41). That allegation may be conclusory (*see* Br. 17). ReviewVio, however, does not confront the more factual allegations that remain. Yelp's marks appeared:

- online and in store windows starting in 2006 and 2007 (Amd. Compl. ¶¶ 40–42);

---

[1] Key to damages, ReviewVio does not contest *willfulness* (*see* Br. 6 (stating allegation without contesting its sufficiency); Amd. Compl. ¶¶ 24–25, 31–34)). *See Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 219 (2020) (addressing 15 U.S.C. § 1117).

[2] *Perfumebay.com v. eBay*, 506 F.3d 1165, 1180 & n.7 (9th Cir. 2007) (noting defendant did not appeal trial court fame finding); *Nike v. Nikepal Int'l, Inc*., No. 2:05-cv-1468-GEB-JFM, 2007 WL 2782030, at *6 (E.D. Cal. Sept. 18, 2007) (Judge Garland E. Burrell, Jr.).

United States District Court
Northern District of California

- on websites and mobile apps, wherein reviewers have contributed hundreds of millions of reviews and other content (*id.* ¶¶ 17, 40); and

- in national media coverage, from a 2012 article on the "People Love Us on Yelp" window clings (*id.* ¶ 43 n.6), to a 2024 television show on Yelp-reviewed restaurants (*id.* ¶ 44).

These support the inference that Yelp's marks are "widely recognized by the general consuming public," among other factors met. *See* 15 U.S.C. § 1125(c)(2)(A); *cf. Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 869–71 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1514 (2021) (mem.). For pleading purposes, the marks are famous.

### *(ii)* *Blurring or Tarnishment.*

ReviewVio also contends the complaint's allegations of blurring and tarnishment are conclusory (Br. 18). Both forms of dilution involve an unwanted "association arising from the similarity between a mark or trade name and a famous mark." 15 U.S.C. § 1125(c)(2)(B), (C). For blurring, this association must furthermore "impair[] the distinctiveness of the famous mark," *id.* § 1125(c)(2)(B), while for tarnishment it must "harm[] the reputation of the famous mark," *id.* § 1125(c)(2)(C).

ReviewVio allegedly uses Yelp's marks to tout ReviewVio's "[i]ntegration[]" with Yelp (*e.g.*, Amd. Compl. ¶¶ 47–48). That integration was said to let businesses withhold or take down negative reviews from Yelp (*id.* ¶¶ 7, 22, 28–29). Construed in plaintiff's favor, ReviewVio's marketing risks associating Yelp's trademarks for a service presenting *all* reviews — positive or negative — with a service for presenting only *self-serving* reviews (*id.* ¶¶ 25–29, 49). Business customers might "form unfavorable associations" with Yelp's mark. *See Avery Dennison*, 189 F.3d at 881. The complaint states dilution.

Again, descriptive uses of a mark are not always condemned. Dismissal may be merited where a famous trademark refers only to the famous product or service — including to tell customers how one's own service compares or functions. *See* 15 U.S.C. § 1125(c)(3)(A); *Jack Daniel's v. VIP Prods. LLC*, 599 U.S. 140, 157 & n.2, 162 (2023). Here, however, the verbal and visual ambiguities of ReviewVio's advertised "[i]ntegration[]" (*e.g.*, Amd. Compl. ¶ 48)

United States District Court
Northern District of California

brings Yelp's allegations within the Lanham Act's ambit. *See Jack Daniel's*, 599 U.S. at 162; *cf. Volkswagenwerk*, 411 F.2d at 352 (holding shop may advertise that it repairs Volkswagen cars but not that it has a Volkswagen affiliation).

ReviewVio's motion to dismiss the trademark dilution claims under § 1125(c) is **DENIED**.

### 5.    CALIFORNIA LAW:  UNFAIR COMPETITION UNDER SECTION 17200.

Yelp's complaint also alleges violations under California law, beginning with unfair competition (Amd. Compl. ¶¶ 79–85).  Section 17200 of California's Business and Professions Code condemns "any unlawful, unfair or fraudulent business act or practice."  ReviewVio first argues the complaint does not create standing for Yelp (Br. 8–9), and next that it does not state any unlawful, unfair, or fraudulent practice meriting relief (*id.* at 9–11).

### A.    STANDING.

To enjoy standing, a private plaintiff must:

> (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim.

*See Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 884–85 (Cal. 2011); *see also* Cal. Bus. & Prof. Code § 17204.  ReviewVio and Yelp primarily contest the causation element.

*For fraud-based claims*, both agree causation must be shown by actual reliance.  *See also Kwikset*, 246 P.3d at 887–88.  They disagree whose reliance counts.  ReviewVio contends the reliance must be plaintiff's (Br. 8–9).  Yelp counters the reliance can be a third party's, at least when the third party is plaintiff's potential customer (*see* Opp. Br. 17–20).

Neither the California Supreme Court nor the Ninth Circuit has decided the question, and district courts are split.  ReviewVio cites an order adopting the first-party rule for all suits (Br. 8 (citing *L.A. Taxi Coop. v. Uber*, 114 F. Supp. 3d 852, 867 (N.D. Cal. 2015) (Judge Jon S. Tigar))).  Yelp cites another — by the same judge — disavowing the prior logic and adopting the third-party rule for competitor suits (Opp. Br. 18–19 (citing *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, No. 21-cv-01280-JST, 2021 WL 11593043, at *6–7 (N.D. Cal.

16

1    Aug. 16, 2021) (Judge Jon S. Tigar) ("disavow[ing]" *L.A. Taxi*))).  This order is likewise

2    persuaded to follow the third-party rule.

3         Section 17200's heightened standing rule resulted from a referendum meant "to prohibit

4    private attorneys from filing lawsuits for unfair competition where they have no client who has

5    been injured." *Kwikset*, 246 P.3d at 886.  For suits brought by consumers, requiring the named

6    plaintiff to have *actually relied* on the fraud makes sense.  *See id.* at 887–88; *Hinojos v.*

7    *Kohl's Corp.*, 718 F.3d 1098, 1106–07 (9th Cir. 2013).  It stops frivolous suits.  *See Kwikset*,

8    246 P.3d at 894.  For suits brought by competitors, however, insisting the plaintiff assert *she*

9    was fooled by the fraud her competitor flung at *her customers* hardly makes sense.  It holds

10   back even nonfrivolous suits.  *Cf. ibid.*  "[R]equiring all plaintiffs to prove actual reliance

11   would in fact defeat [Section 17200] and [Section 17500]'s purpose of protecting consumers

12   and competitors alike." *Lona's*, 2021 WL 151978, at *12.

13        In an illustrative case, third-party standing applied to a restaurant that sued a delivery

14   service.  *Ibid.*  Lona's Lil Eats ("Lona") decided not to partner with DoorDash.  *Id.* at *2.

15   When customers searched the DoorDash service for Lona, DoorDash represented Lona as

16   closed and not offering *any* delivery option (neither true).  *Ibid.*  Lona alleged that DoorDash's

17   misrepresentations caused Lona's potential customers to buy food elsewhere, injuring Lona.

18   *Id.* at *3.  The court determined Lona had standing under Section 17200 because of the

19   customers' likely reliance and Lona's resulting injury.  *Id.* at *10–12.

20        Much like here.  The complaint alleges that ReviewVio falsely marketed an

21   "[i]ntegration[]" with Yelp (*e.g.*, Amd. Compl. ¶ 48).  ReviewVio represented it could post

22   only positive reviews to Yelp while actively removing negative ones (*e.g.*, *id.* ¶ 25).

23   Customers relied on those representations to purchase ReviewVio's services — ReviewVio

24   does not argue otherwise — but they never received those services because neither ReviewVio

25   nor Yelp works as ReviewVio promised (*id.* ¶ 29).  This injures Yelp.  Customers who buy

26   ReviewVio's services to promote themselves on Yelp (i.e., review management) may not buy

27   Yelp's services to promote themselves on Yelp (i.e., ads) (*ibid.*).  Believing ReviewVio's false

28   representations, some might even choose to stop participating on Yelp (*id.* ¶¶ 27, 29).

United States District Court
Northern District of California

17

ReviewVio's contention it does not compete with Yelp (*e.g.*, Br. 13) again oversimplifies the two services' alleged activities.

*For non-fraud claims*, showing economic injury caused by defendant need not entail showing actual reliance. *Kwikset*, 246 P.3d at 887. Yelp thus has standing for an even simpler reason. The complaint claims relief under Section 17200 for harms not rooted in fraud. It alleges that ReviewVio's services involved review gating (*e.g.*, Amd. Compl. ¶ 4). Put aside ReviewVio's allegedly fraudulent representations about its review gating: The complaint additionally characterizes review gating as unlawful and unfair — and alleges the practice cost Yelp resources to combat (*see, e.g.*, *id.* ¶¶ 7, 28). ReviewVio nowhere asserts Yelp lacks Section 17200 standing on this or related bases (*see* Br. 8–9). Yelp has standing. *See Cal. Med. Ass'n v. Aetna Health Cal. Inc.*, 532 P.3d 250, 255 (Cal. 2023).

## B.   THE CLAIM ELEMENTS.

Each flavor of unfair competition — unlawful, unfair, or fraudulent — is "a separate and distinct theory of liability." *Lozano v. AT&T*, 504 F.3d 718, 731 (9th Cir. 2007). This order takes each in turn, mindful that theories asserting fraud must be pled under Rule 9(b).

### (i)   *Fraud: Alleged Misrepresentations of Yelp-Related Abilities and Association.*

ReviewVio first contends Yelp's complaint fails to allege any fraud, let alone with particularity (Br. 9–10). "A [Section 17200] claim based on the fraudulent prong can be based on representations that deceive because they are untrue, but also those which may be accurate on some level, but will nonetheless tend to mislead or deceive  . . . ." *Morgan v. AT&T*, 177 Cal. App. 4th 1235, 1256 (2d Dist. 2009) (cleaned up). ReviewVio repeats contentions it made regarding false association and false advertising under the Lanham Act. Its arguments again fall short. ReviewVio's marketing materials allegedly mislead business customers about ReviewVio's relationship and capabilities with respect to Yelp (*e.g.*, Amd. Compl. ¶¶ 22, 25–29, 46–49). These allegations are "specific enough to give defendants notice of the particular misconduct so that they can defend against the charge." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (cleaned up) (analyzing Rule 9(b)).

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### (ii)     Unlawfulness:  Alleged Lanham Act Violations.

ReviewVio next argues Yelp's complaint does not allege unlawfulness giving rise to Section 17200 claims "other than the currently alleged violations in the [complaint]" (Br. 10). And?  Those violations will do.  The alleged trademark violations (Amd. Compl. ¶¶ 50–78) sufficiently plead unlawfulness.  *See WalkMe Ltd. v. Whatfix, Inc.*, No.23-cv-03991-JSW, 2024 WL 1221960, at *6 n.2 (N.D. Cal. Mar. 21, 2024) (Judge Jeffrey S. White).  Yelp does not specifically oppose ReviewVio's separate argument that review gating and removal requests are not unlawful (*compare* Br. 10–11, *with* Opp. Br. 20).  Nonetheless, Yelp's complaint states a predicate for unlawfulness.

### (iii)     Unfairness:  Alleged Misrepresentations, Review Gating, and Review Takedown Requests.

ReviewVio finally argues that the complaint does not allege unfairness because it did not show that any injury outweighed any benefit (Br. 11).  Yelp counters that the law does not require this balancing (Opp. Br. 21).  Yelp's statement of law again persuades.

In Section 17200 suits brought by consumers, analyzing unfairness historically "involve[d] balancing the harm to the consumer against the utility of the defendant's practice." *See Lozano*, 504 F.3d at 735.  In Section 17200 suits brought by *competitors*, however, unfairness must now be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."  *Ibid.* (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999)).  Courts may look to regulators and courts "carrying out" laws, including laws enforced by the Federal Trade Commission (the "Commission"). *See Cel-Tech*, 973 P.2d at 543–44 & n.11.

Here, the complaint alleges conduct like that which the Commission's actions have allegedly addressed (Amd. Compl. ¶ 7 & n.2).  Even if ReviewVio's allegations cannot establish that ReviewVio's conduct crossed a bona fide federal policy, they create a colorable Section 17200 claim:  Federal law is not "controlling" here, but "persuasive."  *Cel-Tech*, 973 P.2d at 544 n.11.  ReviewVio offers no countervailing authority or clear analysis (*see, e.g.*, Reply Br. 6–7).  Finally, even if the unfairness prong required literal recitation of the ways

19

1   "ReviewVio received an unfair advantage" (Br. 2), Yelp's factual allegations regarding how

2   ReviewVio breaks trademark law to win customers does exactly that.

3          In sum, Yelp's complaint adequately alleges Section 17200 claims for relief from

4   ReviewVio's alleged misrepresentations to businesses, Lanham Act violations, and review

5   suppression practices.  Subject to the provisos in Part 8, ReviewVio's motion to dismiss the

6   unfair competition claims under Section 17200 is **DENIED**.

7          6.      **CALIFORNIA LAW:  FALSE ADVERTISING UNDER SECTION 17500.**

8          The same goes for the complaint's false advertising claims under Section 17500 of

9   California Business and Professions Code (Amd. Compl. ¶¶ 86–91).  ReviewVio recites

10  familiar objection's to Yelp's standing and false advertising allegations (Br. 12–13).  Yelp

11  recites familiar counters (Opp. Br. 22 (citing Amd. Compl. ¶¶ 25–30)).  This order need not

12  repeat itself.  "[T]he [Section 17200] and [Section 17500] standing requirements are identical."

13  *Hinojos*, 718 F.3d at 1103.  Likewise their fraud standards.  *Williams v. Gerber Prods. Co.*,

14  552 F.3d 934, 938 (9th Cir. 2008).  And so at least for pleading purposes, alleged

15  misrepresentations that plausibly violate one plausibly violate the other.  *Cf. id.*  Similarly,

16  because Yelp's complaint states a claim under § 1125(a), it also states a claim under Section

17  17500.  *See Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, No. C 12-03762 SI, 2014 WL

18  572290, at *3 (N.D. Cal. Feb. 11, 2014) (Judge Susan Illston); *cf. Harbor Breeze Corp. v.*

19  *Newport Landing Sportfishing, Inc.*, 28 F.4th 35, 38 n.1 (9th Cir. 2022).  Yelp has standing and

20  states a claim, including under Rule 9(b).

21         Again, subject to the provisos in Part 8, ReviewVio's motion to dismiss the false

22  advertising claims under Section 17500 is **DENIED**.

23         7.      **CALIFORNIA LAW:  BREACH OF CONTRACT.**

24         Finally, Yelp's complaint claims relief from breach of contract (Amd. Compl. ¶¶ 92–97).

25  The complaint alleges that "Yelp's Terms of Service constitute a written agreement between

26  Review[V]io and Yelp" (*id.* ¶ 94).  And, while "Yelp has performed all  .  .  . promises

27  required" (*id.* ¶ 95), ReviewVio has not (*id.* ¶ 96).  Among the allegations, ReviewVio:

28

United States District Court
Northern District of California

20

- accesses Yelp's service even after Yelp banned ReviewVio (*see* Amd. Compl. ¶¶ 25, 34, 36), violating Terms of Service ("Terms") 4(A) (*id.* ¶¶ 96(a));

- assists others in "refrain[ing] from posting or removing reviews," violating Terms 7(B)(ii) (*id.* ¶ 96(b));

- uses Yelp's service to promote its own business (*e.g.*, *id.* ¶ 22 & Exh. A), violating Terms 7(B)(v) (*id.* ¶ 96(c));

- uses Yelp's marks without permission (*e.g.*, *id.* ¶¶ 45–49), violating Additional Terms for Business Accounts ("Addt'l Terms") 1(B)(vii) (*id.* ¶ 96(i)), and

- uses automated devices to scrape Yelp's service in order to facilitate unpermitted uses like meritless content reporting (*id.* ¶ 96(f)–(g) & Exh. D at 7–8), violating Terms 7(B)(x) and 7(B)(xiv) (*ibid.*).

"[T]he essential elements of [a contract breach claim are]: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Reichert v. Gen. Ins. Co. of Am.*, 442 P.2d 377, 381 (Cal. 1968). ReviewVio contests only that Yelp's complaint fails to plead the first and fourth elements (*see* Br. 18–19; Opp. Br. 22).

On the *first* element, ReviewVio's ballyhoo amounts to this: Yelp's complaint fails to allege that ReviewVio agreed to Yelp's Terms of Service because it alleges that ReviewVio agreed to them more than once (Br. 19). Yelp's complaint alleges that ReviewVio "logged into its Yelp accounts," and thereby "agreed to and is bound by Yelp's Terms of Service," which are dated December 13, 2019 (Amd. Compl. ¶ 36 & Exh. F). That date precedes ReviewVio's alleged use of Yelp's platform (*id.* ¶¶ 22, 36, 93). ReviewVio does not contest that contracts can be formed by clickwrap, browsewrap, and sign-in wrap (Br. 18–19). *See Keebaugh v. Warner Bros.*, 100 F.4th 1005, 1013–15 (9th Cir. 2024). To the extent alleging a contract's existence requires alleging an "exchange for a promise," *see In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 610 (9th Cir. 2020), such exchange is alleged here: "[Yelp] grant[s] [ReviewVio] permission to use [Yelp] subject to these Terms" (Exh. F, Terms 4(A)), and "[ReviewVio] warrant[s] that [it] will not . . . be compensated to post, refrain

from posting, or remove a review" (*id.* 7(B)(ii)).  The complaint plausibly alleges a contract between Yelp and ReviewVio.

On the fourth element, damages, ReviewVio's summary of the contentions and caselaw merits fewer stars, but perhaps still one.  ReviewVio argues that Yelp's allegations are conclusory (Br. 19).  ReviewVio, however, itself recites the complaint's factually textured allegations (*ibid.*).  These include Yelp's alleged "additional employee costs" and "sales injuries" (*see ibid.* (citing Amd. Compl. ¶¶ 96, 97)).  That suffices.  Such pleading surpasses the naked assertion that plaintiff "suffered injury," as occurred in the case ReviewVio cites (*ibid.* (citing *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 709, 717 (N.D. Cal. 2011) (Judge James Ware))).  Exacting tallies are not yet needed here.  *See Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107, 1114 (N.D. Cal. 2020) (Judge Yvonne Gonzalez Rogers).

Why, then, do ReviewVio's damages contentions merit one star?  Plaintiff must show not merely damages, but damages *resulting from* defendant's breach.  *See Pat. Scaffolding Co. v. William Simpson Constr. Co.*, 64 Cal. Rptr. 187, 191–92 (Ct. App. 1967).  The textured allegations noted above suffice to state damages flowing from ReviewVio:

- accessing Yelp to submit meritless reports (Terms 4(A));
- encouraging others to refrain from posting reviews, for a fee, plausibly in violation of law (Terms 7(B)(ii), (viii); Addt'l Terms 1(B)(iv));
- using Yelp to promote its own business without Yelp's authorization (Terms 7(B)(v)); and
- displaying Yelp's proprietary content and trademarks without Yelp's express authorization (Terms 7(B)(ix); Addt'l Terms 1(B)(vii)).

By contrast, there are not even conclusory allegations of damages flowing from ReviewVio's purported scraping that are not already explained by the breaches above.  Yelp's complaint does not raise scraping in any paragraph except the one claiming relief from scraping (*compare* Amd. Compl. ¶¶ 1–95, 97, *with id.* ¶ 96(f)–(g)).  And Yelp's exhibits attached to its complaint mention scraping in just two more places: in a Yelp email to ReviewVio making a litany of allegations (Exh. D at 7–8), and in ReviewVio's reply denying them (Exh. E at 2).  Even

assuming this exchange states breach —ReviewVio does not argue otherwise — it does not state damages to Yelp flowing from that breach. Nothing alleged makes plausible that cognizable damages flow or will flow from scraping and not from other alleged breaches. *See X Corp. v. Bright Data Ltd.*, No. C 23-03698 WHA, 2024 WL 2113859, at *9–10, *13–14 (N.D. Cal. May 9, 2024).

In sum, Yelp's complaint states a claim for breach of contract, except as to scraping. With that proviso, ReviewVio's motion to dismiss the California contract claim is **DENIED**.

### 8.    PROVISOS FOR THE MOTION TO DISMISS.

#### A.    STATE CLAIMS PARALLELING OR INVOKING FEDERAL CLAIMS.

To avoid doubt, to the extent Yelp's complaint brings trademark-styled state law claims that parallel its federal claims, it also states those claims adequately. This applies to:

- dilution claims, *see, e.g.*, *Jada Toys*, 518 F.3d at 634;

- false advertising and false association claims, *see, e.g.*, *Harbor Breeze*, 28 F.4th at 38 n.1; *Kwan Software*, 2014 WL 572290, at *3; and

- infringement claims used as predicates for Section 17200, *see Applied Underwriters*, 913 F.3d at 893 n.6; *WalkMe*, 2024 WL 1221960, at *6 n.2.

#### B.    CLAIMS OF MISREPRESENTATIONS MADE TO INDIVIDUAL CONSUMERS (RATHER THAN TO BUSINESS CUSTOMERS).

To the extent Yelp's complaint claims *damages* from misrepresentations made directly to individual consumers (not business customers), those claims fail to meet Rule 9(b).

The complaint alleges that Yelp's service brings together two sides: businesses and the consumers who review them (Amd. Compl. ¶ 15). The complaint further alleges that ReviewVio's business also involves businesses and consumers (*e.g.*, *id.* ¶¶ 4, 6). In its motion to dismiss, however, ReviewVio contends that the complaint stops short of alleging that ReviewVio made misrepresentations to individual consumers (*see, e.g.*, Br. 16). In opposition, Yelp argues that ReviewVio marketed to business customers, reiterating "ReviewVio's PowerPoint sales collateral" (Opp. Br. 13–14 (citing Amd. Compl. ¶ 48); *see also* Tr. 12:46). As the parties suggest, who is likely to see the representations is core to the confusion analysis

United States District Court
Northern District of California

in many claims.  And, where two services are "totally unrelated," absence of confusion can be decided as a matter of law and merit dismissal.  *See Murray v. CNBC*, 86 F.3d 858, 861 (9th Cir. 1996), *cert. denied*, 519 U.S. 1058 (1997) .  Yelp's and ReviewVio's services, however, *are* related.  A simpler reason to dismiss some claims is Rule 9(b).

Where a claim invokes fraud, the fraud element — or, if a course of conduct, then all elements — must be pled with specificity.  *Vess*, 317 F.3d at 1103–05.  To the extent Yelp's complaint claims damages from misrepresentations made directly to consumers, the complaint fails to allege "the who, what, when, where, and how of the misconduct charged."  *Id.* at 1106 (internal quotation marks omitted).  At most, the complaint alleges that:

> For similar reasons [to those which cost Yelp its business customers], Review[V]io's misrepresentations also cost Yelp [its reviewers], which in turn means Yelp misses out on contributions and traffic from such individuals, which could otherwise help Yelp obtain advertising clients.

(Amd. Compl. ¶ 29).  This allegation may support a theory of damages flowing from specific misrepresentations ReviewVio made to businesses.  It does not, however, allege damages flowing from independent misrepresentations ReviewVio made to consumers.  ReviewVio's alleged websites (*e.g.*, *id.* ¶¶ 7, 46 & n.7) do not fill this gap because no specific factual allegation supports how individual *consumers* came across these sites to learn about the "Dandy Dashboard" and ways to "Grow Your Clients With Dandy" (*ibid.*).

As a result, to the extent Yelp's complaint claims *damages* from misrepresentations ReviewVio made *directly* to consumers, those claims do not meet Rule 9(b).  Yelp already acknowledges no damages are available to it under California's Section 17200 and 17500 (*see* Opp. Br. 20 n.9).  The limitation developed here thus further applies to damages for:

- false advertising and false association that target consumers under § 1125(a); and
- willful infringement that targets consumers.

That said, to the extent Yelp's complaint seeks injunctive relief barring misrepresentations to consumers, those claims do not suffer the same limitation.  As noted above, Yelp's complaint alleges that generating revenues from businesses requires goodwill with businesses and consumers (*see, e.g.*, Amd. Compl. ¶¶ 19, 29).  And although no

24

misrepresentation to consumers is factually alleged, misrepresentations to businesses and ReviewVio's ability to make representations to consumers are alleged (*id.* ¶ 7; see also Tr. 6:20, 14:40, 17:35).  These allegations make harms plausible that may entitle Yelp to an injunction limiting ReviewVio's use of Yelp's marks with businesses and with consumers.

### 9.    THE MOTION TO STRIKE.

#### A.    LEGAL STANDARD.

Under Rule 12(f), the court may strike "any redundant, immaterial, impertinent, or scandalous matter."  The rule aims "to avoid the expenditure of time and money that must arise from litigating spurious issues."  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  The rule is not, however, a vehicle for resolving disputed fact or law.  *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–75 (9th Cir. 2010).  To merit striking, a passage should "have no possible bearing upon the subject matter of the litigation."  *Naton v. Bank of California*, 72 F.R.D. 550, 551 n.4 (N.D. Cal. 1976) (Judge William H. Orrick, Jr.).

#### B.    PROPOSED PASSAGES.

ReviewVio moves to strike eight passages as "immaterial and impertinent" (Strike Br. 2–5).  It argues that the passages do not support "the essence of Plaintiff's" complaint: that "Defendant's alleged use of Yelp's marks is, in its mind, likely to cause confusion, cause mistake, or deceive consumers  .  .  .  ."  (Strike Br. 5).  Because ReviewVio's motion attempts only to show that the passages are impertinent to some (but not all) claims for relief, the motion fails to show the content could "have no possible bearing on the subject matter of the litigation."  *Naton*, 72 F.R.D. at 551 n.4.  Even had ReviewVio argued the passages were strictly impertinent, ReviewVio would not prevail.  This order briefly reviews the content types ReviewVio isolates as problematic (*see* Strike Br. 4–5).

##### (i)    *The Assertions that 93% of Survey's Respondents Read Reviews (Amd. Compl. ¶ 2 & n.1).*

ReviewVio contends "the outcome of an unrelated survey" is "not essential or important to any claim or defense" (Strike Br. 4).  Not so.  The complaint's claims for relief allege that ReviewVio's representations about Yelp prompted businesses to buy review-gating services

from ReviewVio instead of ad services from Yelp (*e.g.*, Amd. Compl. ¶ 29).  How many

people use reviews — and why (or why not) — pertains to how many businesses might buy

services to skew their reviews or else buy advertisements to spring past them (*see ibid.*).

> ### (ii)     The Assertions that Deceptive Review Practices Tarnish Yelp's Brand, Are Unfair to Businesses, and Make Yelp Less Useful (Amd. Compl. ¶ 3).

ReviewVio argues that reference to "Yelp's general and unrelated deceptive review

practices" should be struck because, it seems, they do not show that using Yelp's marks causes

"confusion" (Strike Br. 4–5).  Yet "confusion is irrelevant" to dilution.  *Avery Dennison*, 189

F.3d at 875.  And indeed the challenged allegations might matter to that claim:  Yelp's review

practices might evidence brand qualities Yelp works to protect, and which ReviewVio's use of

Yelp's marks tarnishes.  Such statements might also pertain to Yelp's economic injury caused

by ReviewVio's activities, as further addressed next.

> ### (iii)    The Assertions that the Commission Has Brought Actions Against Parties Engaged in Review Suppression, and Has Involved Yelp's Efforts (Amd. Compl. ¶¶ 7 & n.2, 20).

Once again, ReviewVio argues that "unrelated [Commission] enforcement actions" do

not pertain to confusion (Strike Br. 4–5).  Federal enforcement actions might be "persuasive"

"guidance" a practice is unfair.  *See Cel-Tech*, 973 P.2d at 544 n.11.  And such actions might

be — not as legal pronouncements, but as practical costs to Yelp in time and treasure (*see*

Amd. Compl. ¶¶ 7 & n.2, 20, 28) — pertinent to claims seeking damages or injunctive relief.

> ### (iv)    The Assertions that Yelp's User Operations Team Removes Specific Types of Content (Amd. Compl. ¶¶ 21 & n.5).

For reasons above, Yelp's "removal of unrelated material" (Strike Br. 4) is also pertinent.

In sum, ReviewVio fails to show how the proposed passages are so "redundant,

immaterial, impertinent, or scandalous" as to merit culling.  Its motion to strike is **DENIED**.

26

1

**CONCLUSION**

2     For the foregoing reasons, the motion to dismiss is **GRANTED IN PART** and **DENIED IN**

3    **PART**.  To the extent any claim seeks damages *and* alleges as an element or course of conduct

4    that ReviewVio made fraudulent misrepresentations directly to consumers (rather than to

5    business customers), the motion is **GRANTED**.  To the extent otherwise, the motion is **DENIED**.

6    This grant in part and denial in part covers all claims: federal unfair competition, trademark

7    infringement, and dilution, and California unfair competition, false advertising, and breach of

8    contract.  ReviewVio's answer is due in **FOURTEEN DAYS**.

9     Yelp may move for leave to amend its complaint.  Such motion must be filed within

10   **FOURTEEN DAYS** and include as an exhibit a redlined version of the proposed amendment that

11   clearly identifies all changes.

12    ReviewVio's motion to strike is **DENIED**.

13

14    **IT IS SO ORDERED**.

15

16   Dated:  June 6, 2024.

17

18   _____
      WILLIAM ALSUP
19    UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California